```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| SARAH DAVIS, ADMINISTRATRIX, AD PROSEQUENDUM, et al., | HONORABLE JOSEPH E. IRENAS |
| Plaintiffs, | NO. 02-CV-3659 (JEI) |
| v. | **OPINION** |
| TOWNSHIP OF PAULSBORO, et al., | |
| Defendants. | |

**APPEARANCES:**

MARSHALL L. WILLIAMS
By: Marshall L. Williams, Esq.
1201 Sansom Street
3rd Floor
Philadelphia, PA 19107
          Attorney for Plaintiffs

ROTOLO & MIDLIGE
By: E. Carr Cornog, III, Esq.
2200 Route 31, Suite 12
Lebanon, NJ 08333
          Attorney for Gloucester County Defendants

POWELL, BIRCHMEIER & POWELL
By: James R. Birchmeier, Esq.
1891 State Highway 50
P.O. Box 582
Tuckahoe, NJ 08250-0582
          Attorney for Borough of Paulsboro Defendants

PARKER, MCCAY & CRISCUOLO, P.A.
By: Lisa B. Baughman, Esq.
Three Greentree Centre, Suite 401
Route 73 & Greentree Road
P.O. Box 974
Marlton, NJ 08053
          Attorney for Defendant Underwood Memorial Hospital

1

```
BLUMBERG & LINDNER, LLC
By: Charles B. Austermuhl
158 Delaware Street
P.O. Box 68
Woodbury, NJ 08096
        Attorney for Defendant Dr. Arriviello
```

**IRENAS,** Senior District Judge:

Presently before this Court is the Gloucester County[1] Defendants' Cross-Motion to Dismiss the state law tort claims under Fed. R. Civ. P. 12(b)(6), filed in response to Plaintiffs' Motion for Leave to File a Fourth Amended Complaint.[2] The Gloucester County Defendants argue that Plaintiffs Ernest Davis,[3] Sarah Davis and Willie Graham cannot maintain their state law

---

[1] Throughout this Opinion, "Gloucester County Defendants" will refer to the following entities and individuals: (1) Gloucester County, New Jersey (the "County"), a political subdivision of New Jersey, which provides services to the county through the Gloucester County Sheriff Department ("GCSD") and the Gloucester County Prison ("GCP") (GCP is sued both individually and as a unit, entity, agent and/or political subdivision of the County); (2) Gloucester County Sheriff, Charles Gill ("Gill"), an individual sued in his official capacity, "in which capacity he bears responsibility for the operation of the GCP and GCSD;" (3) Lt. William Crank ("Crank"), an individual believed to be on duty as the booking lieutenant on August 13, 2000, sued both individually and as an officer, agent and/or employee of the County; (4) Deputy Sheriff Robert DeMarzio ("DeMarzio"), an individual believed to be in the booking unit on August 13, 2000, sued both individually and as an officer, agent and/or employee of the County; (5) Deputy Sheriff Brian Galloway ("Galloway"), an individual believed to be in the booking unit on August 13, 2000, sued both individually and as an officer, agent and/or employee of the County; (6) Deputy Sheriff Justin Hatton, an individual believed to be in the booking unit on August 13, 2000, sued both individually and as an officer, agent and/or employee of the County; and (7) Jane Doe and John Doe. (Third Am. Compl. ¶ 21-29.) James Walker, a medic for the County, was named as a defendant in the Third Amended Complaint, but was terminated as a party on June 3, 2004.

[2] Because both parties clearly rely on matters outside the pleadings, this Court has treated the motion as one made under Fed. R. Civ. P. 56.

[3] After the papers on this motion were submitted, Ernest Davis, who died on October 15, 2004, was replaced as a plaintiff by Sarah Davis, as Administratrix Ad Prosequendum. (Order dated April 15, 2005, docket no. 155.)

2

claims in Counts II and III[4] of the Third Amended Complaint[5] because they did not comply with the notice provisions of New Jersey Tort Claims Act ("TCA"), New Jersey Stat. Ann. § 59:1-1, et seq.

Because we find that the notice requirements of the TCA do not apply to causes of action which allege the commission of intentional torts by public employees and which accrued prior to June, 2004, the Cross-Motion to Dismiss will be denied to the extent that Counts II and III allege claims based on the commission of intentional torts by public employees (as opposed to public entities). *See Velez v. City of Jersey City*, 180 N.J. 284 (2004).

The Cross-Motion to Dismiss Mr. Davis's remaining claims in Count II (negligence or intentional torts against public entities) will be denied because there is a factual issue as to whether the time period in which he was required to give notice under the TCA was tolled by his incompetence.

With respect to the non-*Velez* claims asserted by Mr. Davis's parents in Count III, which are not derivative of Mr. Davis's claims in Count II, the Cross-Motion will be granted and those claims will be dismissed, because a notice of claim was required,

---

[4] Count II contains claims by Ernest Davis and Count III contains claims by Ernest Davis's parents, Sarah Davis and Willie Graham, individually.

[5] Unless otherwise indicated, all references will be to the Third Amended Complaint.

but was not provided within the statutory period.  The Cross-Motion will be denied as to any claims asserted in Count III which are derivative of Mr. Davis's Count II claims.

I.

The Court will not repeat in full the long and complicated procedural history of this matter.  The background of this case is fully set forth in an Opinion by Magistrate Judge Anne Marie Donio, dated November 30, 2004, Docket No. 116.  A few points relevant to the instant motion, however, should be noted.

A.

This lawsuit stems from a series of events in the early morning hours of August 13, 2000, in Paulsboro, New Jersey - an altercation at a bar, and the subsequent arrest, incarceration and hospitalization of Mr. Davis. (Second Am. Compl., at ¶ 29.) Mr. Davis and his parents, Sarah Davis and Willie Graham ("parents"), have made claims in this suit against a number of entities and individuals.

Mr. Davis was allegedly involved in a bar fight at approximately 2:00 a.m.  He went (or was taken) to his girlfriend's house, where he blacked out for some period of time. The police appeared at the girlfriend's house and took Mr. Davis into custody.  The Complaint alleges that Mr. Davis was injured

4

during his arrest and while in custody.

Mr. Davis was released from jail and taken to the Underwood Memorial Hospital ("UMH") by ambulance at approximately 3:00 a.m. The Complaint alleges that Davis was released from UMH into police custody around 3:45 a.m., only to be brought to Cooper Medical Center ("Cooper") later in the morning, around 9:00 a.m. (Third Am. Compl., at ¶¶ 74, 98.)

B.

The bulk of the moving and opposition papers focus on Plaintiffs' awareness of and ability or competence to pursue potential causes of action against the Gloucester County Defendants.

1.

Mr. Davis's physical and mental capabilities have been called into question. Mr. Davis was unconscious when he was admitted to Cooper on August 13, 2000, and remained in a comatose state at Cooper until October 16, 2000. (Third Am. Compl., at ¶ 100.)

On November 21, 2000, Mr. Davis was transferred from Cooper to Moss Rehabilitation Center ("Moss"). (*Id*. at ¶ 101.) Mr. Davis was discharged from Moss on June 27, 2001.

Thereafter, he took various prescription medications and

5

underwent at least one surgery for a lung infection. (*Id.* at ¶ 102; Pl. Opp., at p. 7; Mr. Davis Dep., at p.77.) According to Plaintiffs, Mr. Davis was deemed "disabled" by the Social Security Administration in 2001. (Pl. Opp., at p. 7.)

At his deposition on April 5, 2004, Mr. Davis testified about his physical and mental condition. He stated that he utilized a wheelchair until late 2003 and suffered from other physical limitations, *inter alia,* limited vision for extended periods of time, limited range of motion and use of his left shoulder and arm. (E. Davis Dep., at p. 57-58; 61-63.) Mr. Davis also testified that was undergoing dialysis for kidney failure at the time of his deposition. (*Id.* at p. 77-78.)

During his deposition, Mr. Davis could recall very little about the events of August 13, 2000. He knew that he went to his girlfriend's house but did not remember the police arresting him there. (*Id.* at p. 41.) He could not recall many of the people who he had seen that night. (*Id.* at p. 41-48.) He stated that he was "[a]ware that I was assaulted that evening, but I'm not sure how, or why, or by whom." (*Id.* at p. 86.)

Mr. Davis stated that he was never told that his injuries caused a decrease in his ability to reason, but was told at some point (although he could not pinpoint when) that his injuries caused him to have difficulty retaining facts. (*Id.* at p. 73-74.) When questioned about the answers he provided to the

6

various Defendants' interrogatories, Mr. Davis became confused and repeatedly answered that the details given in the interrogatories could have come from him, but that he either did not remember the events of August 13, 2000, or he did not remember giving the specific answers to the interrogatories. (*Id.* at p. 85-107.)

From August, 2000, to the date of his deposition, Mr. Davis testified that had never been treated for psychological difficulties and that he never entertained suicidal thoughts. Despite his physical and mental limitations, Mr. Davis stated that he felt he could manage his affairs to an extent. (*Id*. at p. 68-69.)

2.

Mr. Davis's mother, Sarah Davis, was contacted by the hospital and by the Gloucester County Sheriff's Department shortly after August 13, 2000. (Interview Notes of C.W.O. Long from Sept. 21, 2000 meeting with Sarah Davis, Ex. P, Def. Letter Reply.)  Sarah Davis met with an investigator from Gloucester County Sheriff's Department on September 21, 2000.  At that time she shared information regarding Mr. Davis's condition and the role of police in the events of August 13, 2000.

Sarah Davis told the investigator what she knew about the events of August 13, 2000.  She had heard rumors of a fight and

7

knew that Mr. Davis was taken to his girlfriend's house at some point. (*Id*.) The interview notes indicate that Sarah Davis knew that Mr. Davis was placed in police custody later.  (*Id*.)

During the meeting, Sarah Davis indicated that she had hired a lawyer or was in the process of hiring a lawyer, as she advised the officer that she would not sign any medical release forms without contacting her attorney first.  (*Id*.)

At some point counsel was retained to represent both Mr. Davis and his parents to pursue claims arising from the events of August 13, 2000.  However, almost two years passed from the date of Mr. Davis's injuries until any notice of claim was filed with Gloucester County.  On July 18, 2002, the attorney for the Plaintiffs mailed short letters to the Clerk of Gloucester County and the Director of the Gloucester County Jail.  On September 10, 2002, Plaintiff's counsel sent a much more detailed notice of claim to an attorney representing the Gloucester County Board of Chosen Freeholders.

## II.

On January 26, 2005, Plaintiffs moved for leave to file a fourth amended complaint, which prompted the instant Cross-Motion.

### A.

Plaintiffs claim that the true names of certain parties were

8

not known until recently.  The proposed amendments would substitute Borough of Paulsboro Police Officer Donald Grey, County of Gloucester Sheriff Officer Kimberly Reichert and Emergency Physician Services for unknown defendant "Does."  In addition, the proposed fourth amended complaint included new counts for wrongful death and survival claims, and requested that Sarah Davis be named Administratrix Ad Prosequendum in place of Mr. Davis.

   The Gloucester County Defendants filed their opposition papers to Plaintiffs' Motion for Leave to Amend on February 18, 2005. (Docket No. 132.)  In addition, also on February 18, 2005, the Gloucester County Defendants filed a Cross-Motion to Dismiss.[6] (Docket No. 133.)  Plaintiffs responded to the Cross-Motion on March 11, 2005, and on March 14, 2005. (Docket Nos. 143 & 146.) Gloucester County Defendants submitted a reply by letter brief, dated March 23, 2005.

   The basis of the Cross-Motion is that Plaintiffs' notice of claim, dated July, 2002, was provided outside the statutory window.  Accordingly, the Cross-Motion argues that the state law claims against the Gloucester County Defendants, found at Counts II and III of Plaintiffs' Third Amended Complaint, must be

---

[6] The other named Defendants in this matter filed their respective opposition papers to the motion for leave to amend with Judge Donio, and have not asserted a position on the Cross-Motion to Dismiss.  (Docket Nos. 131, 134, 139.)  By letter dated March 3, 2005, Judge Ann Marie Donio advised all counsel that Judge Irenas would decide the Cross-Motion, while she would decide the Motion for Leave.

dismissed for non-compliance with the TCA.

In Count II, Mr. Davis alleges claims of: (1) false arrest and imprisonment; (2) assault and battery; (3) malicious prosecution; (4) abuse of process; (5) intentional infliction of emotional distress; (6) negligent infliction of emotional distress; (7) conspiracy tort; (8) negligence; and (9) gross negligence, against all Defendants.

In Count III, the parents allege claims of: (1) intentional infliction of emotional distress, (2) negligent infliction of emotional distress, (3) conspiracy tort, (4) negligence, and (5) gross negligence, against all Defendants.

B.

The Local Rules provide that "[a] cross-motion related to the subject matter of the original motion may be filed by the responding party together with that party's opposition." L. Civ. R. 7.1(f).  Gloucester County Defendants contend that the Cross-Motion and opposition to Plaintiffs' Motion to Amend are related because they "both involve an examination of the manner, method and timeliness of Plaintiffs' notice of claim to the Gloucester County Defendants." (Def. Letter Brief, at p.2.)  Plaintiffs, however, argue that the Cross-Motion is unrelated to the Motion to Amend.

The Cross-Motion is sufficiently related to the initial

Motion for Leave to Amend.  Both motions deal with the state law claims against Gloucester County and its employees.  In addition, both motions specifically address the issue of notice and when information became available to Plaintiffs.  Furthermore, to the extent that the Cross-Motion suffers from any technical deficiencies or strays from the Local Rules in a minimal way, it is within this Court's discretion to allow the Cross-Motion to proceed. *See Delaware Valley Transplant Program v. Coye*, 722 F. Supp. 1188, 1200 n.16 (D.N.J. 1989).

### III.

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In deciding a motion for summary judgment, the court must construe the facts and inferences in a light most favorable to the non-moving party.  *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).  The role of the court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial."  *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  However, "a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but. . . must set forth specific facts showing that there is a genuine issue for trial."  *Id.* at 248 (citation omitted).

IV.

The TCA sets forth a procedural framework for making claims against public entities and public employees.  *See* N.J.S.A. 59:8-3.  The TCA was enacted with the purpose of limiting a public entity's or a public employee's liability in certain situations.  N.J.S.A. 59:1-2; *see also New Jersey Property-Liability Ins. Guar. Ass'n v. State*, 195 N.J. Super. 4, 12 (App. Div. 1984).

A.

One procedural requirement that must be met before a claimant can file suit against a public entity, or its employees,[7] is the notice of claim provision.  N.J.S.A. 59:8-3, 59:8-8.  A suit will be dismissed if the claimant did not provide a notice of claim to the entity within ninety days of the "accrual of a cause of action."  N.J.S.A. 59:8-8.  However, the ninety day

---

[7] The application of the notice provision to public employees is not completely straightforward, and is discussed in more detail *infra*.

statutory window can be tolled for infants and incompetents, until they come of age or become of "sane mind." *Id*.

### 1.

The accrual date under the TCA is generally the date of the accident or date on which the alleged tort is committed. *See Beauchamp v. Amedio*, 164 N.J. 111, 117 (2000); *Pickney v. Jersey City*, 140 N.J. Super. 96, 99 (Law Div. 1976); *Torres v. Jersey City Med. Ctr.*, 140 N.J. Super. 323, 326 (Law Div. 1976).

In limited situations the accrual date may differ from the date of the initial negligent act or omission. Special rules apply when a claimant has passed away; while survival causes of action accrue on the date of the initial injury, a wrongful death cause of action accrues on the date of death. *Iaconianni v. New Jersey Turnpike Authority*, 236 N.J. Super. 294, 298 (App. Div. 1989). In addition, the "discovery rule" may be applied in the TCA context in the unique "case where the victim either is unaware that he has been injured or, although aware of an injury, does not know that a third party is responsible." *Beauchamp*, 164 N.J. at 117, 119.

### 2.

Failure to provide notice within the statutory ninety day window is a ground for dismissal with prejudice. *Sinclair v.*

*Dunagan*, 905 F. Supp. 208, 212 (D.N.J. 1995). The TCA, however, grants courts limited discretion in allowing late notice. If a motion to file late notice, based on "sufficient reasons constituting extraordinary circumstances," is made within a year of the accrual date, a court *may* allow the notice to be served. N.J.S.A. 59:8-9. In exercising discretion within the one year time period, the court examines potential prejudice to the public entity and any extraordinary circumstances facing the claimant. *Id.*

Once the one-year outer time limit has passed, a court cannot allow late notice, and thus cannot consider extraordinary circumstances or potential prejudice. *Sinclair*, 905 F. Supp. at 213; *Iaconianni*, 236 N.J. Super. at 298 (holding that where "the late notice of claim was filed well beyond the one-year outer limit, the trial court has no jurisdiction to extend the filing period"); *Bell v. Camden County*, 147 N.J. Super. 139, 142 (App. Div. 1977) (holding that "[b]oth physical incapacity and ignorance of the statutory requirements, where relevant, may be considered by the judge if he has discretion, i.e. within the one-year time interval," and that "[t]he judge is powerless under the statute to exercise any discretion or to act after an interval of one year has elapsed from the date when the cause of action accrued").

14

B.

The notice of claim procedural requirement does not apply in all cases that otherwise fall within the scope of the TCA.  In *Velez v. City of New Jersey*, 180 N.J. 284, 286 (2004), the New Jersey Supreme Court determined "whether the notice of claim requirements under the New Jersey Tort Claims Act. . . apply to common law intentional tort claims."[8]

*Velez* ultimately held that "the notice provisions of the Act apply to causes of action based on the intentional conduct of public employees."  180 N.J. at 293.  The Court also found that notice for claims against a public employee need not be given directly to the individual employee, but only to the public entity.  *Id*. at 296.[9]

---

[8] The Court notes that neither the Plaintiffs, who merely stated that the TCA was limited in scope, nor the Gloucester County Defendants actually cited to *Velez* in their papers.

[9] The *Velez* analysis began with *Chatman v. Hall*, 128 N.J. 394 (1992), the New Jersey Supreme Court case in which many TCA's protections, including its notice provisions, were found not applicable in suits against public employees.  *Velez*, 180 N.J. at 290.  *Chatman* was overruled by the legislature's amendments to the TCA in 1994, which "create[d] a parallel liability scheme for public employees."  *Id*. at 291 (citing Sponsor's Statement to L. 1994, c. 49, § 1).

As amended, N.J.S.A. 59:3-1(c) specifically states that "[a] public employee is not liable for an injury where a public entity is immune from liability for that injury."  In addition, the TCA, as amended, includes the conjunctive "or public employee" in the notice of claim provision.  N.J.S.A. 59:8-8 ("The claimant shall be forever barred from recovering against a public entity or public employee if" notice is not provided in conformance with the Act.).

N.J.S.A. 59:3-14, which was in effect both before and after the 1994 amendments, was also relevant in *Velez*.  N.J.S.A. 59:3-14(a) provides that "[n]othing in this act shall exonerate a public employee from liability if it established that his conduct was outside the scope of his employment or constituted a crime, actual fraud, actual malice or willful misconduct."  The comment to this provision states its purpose is to prevent a public employee who is "guilty of outrageous conduct" from the protections of the TCA's "limitations as to liability and damages."  *Id*. at cmt.  Prior to *Velez*, courts had reached different conclusions when reconciling the 1994 Amendments' protection of public employees with N.J.S.A. 59:3-1's abrogation of immunity for employees found to have committed intentional acts.

Based on the statutory language and the stated goals of the TCA, the Court determined that the intent of the legislature was to provide immunity and protection for public employees, as well as public entities, regardless of the

However, *Velez* was held to apply prospectively and not retroactively, so that only those "similar causes of action accruing after the date of th[e] opinion," June 29, 2004, are required to comply with the notice of claim provisions. *Id.* at 297.  Causes of action alleging intentional torts against public employees that accrued prior to June 29, 2004, are not required to adhere to the notice of claim provisions. *See, e.g., Ptaszynski v. Uwaneme*, 371 N.J. Super. 333, 343-44 (App. Div. 2004).

To the extent that the Cross-Motion seeks to dismiss claims in Counts II or III against individual public employees who allegedly committed intentional torts,[10] namely Gill, Crank, DeMarzio, Galloway, and Hatton, it will be denied.  (Third Am. Compl. ¶ 21-29.)  Thus, the Court must now consider the TCA notice issue in Counts II and III with respect to: (1) non-intentional torts committed by individual public employees, and (2) all claims against governmental entities.[11]

---

type of tort alleged.  Thus, the notice provision would apply to claims against individuals *and* entities regarding intentional torts.  180 N.J. at 293.

[10] Count II includes the following claims of intentional acts: false arrest and imprisonment; assault and battery; malicious prosecution; abuse of process; intentional infliction of emotional distress; and conspiracy tort. Count III of the Third Amended Complaint includes the following claims of intentional acts: intentional infliction of emotional distress and conspiracy tort.

[11] Plaintiffs currently seek to amend their Complaint to include wrongful death claims.  If their request is granted that particular claim would accrue after *Velez* was decided, specifically in October, 2004, when Mr. Davis died. However, to the extent that Mr. Davis's death converted his claims to survival claims, there is no change in the accrual date.

V.

The earliest possible TCA notice was the letter from Plaintiffs' counsel dated July 18, 2002, and supplemented on September 10, 2002.[12]  Even assuming that the plaintiffs are entitled to the nine month extension provided by N.J.S.A. 59:8-9, the notice give by Plaintiffs would be untimely, unless there was some basis for tolling.

A.

The TCA explicitly provides that "[n]othing in this section shall prohibit an infant or incompetent person from commencing an action under this act within the time limitation contained herein, after his coming to or being of full age or sane mind." N.J.S.A. 59:8-8.

Plaintiffs contend that Mr. Davis's physical and mental condition rendered him incompetent, and thus the notice requirement was tolled.[13]

Mr. Davis was in a comatose state from August 13, 2000, until October 16, 2000.  After he came out of the coma, Mr. Davis remained at Cooper for another month; he then transferred to Moss

---

[12] Plaintiffs' papers refer to notice received by Gloucester County Defendants on July 12, 2002.  However, the notice of claim letter supplied as Exhibit C to the Gloucester County Defendants Opposition to the Plaintiffs' Motion for Leave to Amend is dated July 18, 2002.  We will not speculate as to whether Plaintiffs' statement was a typographical error or an assertion that July 12, 2002 was the true date that notice was provided.  The six day discrepancy does not affect the reasoning or holding of this Opinion.

[13] Plaintiffs, however, have neither suggested a date on which Mr. Davis regained competence, nor have they explicitly stated that he remained incompetent until his death in October, 2004.

where he stayed for over seven months.

After Mr. Davis was released from Moss, he continued to face mental and physical limitations. He had limited range of motion and sight. In addition, he had trouble with his memory. At the same time, Mr. Davis's deposition testimony suggests that he did not lose his ability to reason, and that, at least to some extent, he could manage his affairs and function independently.

At this juncture there is insufficient evidence to support a ruling on Mr. Davis's competency when he came out of the coma, when he was released from Moss, or at any other time prior to when notice was given. Thus, we cannot determine whether the statutory window was tolled, and cannot evaluate the timeliness of the notice of claim.

The Cross-Motion will be denied as it pertains to the claims of Mr. Davis in Count II. If in the future, the evidence shows that Mr. Davis was of "sane mind" and able to provide notice, but failed to do so in compliance with N.J.S.A. 59:8-8, the Gloucester County Defendants may renew their motion to dismiss Count II, except those claims alleging intentional torts against individual public employees.

B.

To the extent that Count III alleges independent claims for direct injuries to the parents' own rights, those claims are not

18

derivative in nature, and thus the parents cannot seek to toll the statutory window to file notice based on Mr. Davis's alleged incapacity.[14]  As previously noted in I.B.2., *supra*, the parents were well aware of the potential claims against Gloucester County and its employees less than two months after the events of August 13, 2000.

Nor can arguments by Sarah Davis and Willie Graham regarding extraordinary circumstances be considered by this Court.  *See Iaconianni*, 236 N.J. Super. at 298;  *Bell*, 147 N.J. Super. at 142-43.  Insofar as Sarah Davis and Willie Graham are asserting independent claims in Count III, they did not comply with the notice provision of the TCA and are barred from asserting these claims (except to the extent that *Velez* applies).

However, it would appear that many of the claims asserted by the parents in Count III could be derivative of the claims asserted by Mr. Davis in Count II. With respect to those derivative claims, the adequacy of the TCA notice will depend on the ultimate determination of Mr. Davis's competence.[15]

---

[14] *See Procanik v. Cillo*, 97 N.J. 339, 355 (1984) (finding that parents' claims for emotional distress and expert medical expenses incurred due to injuries sustained by minor child were based on "direct injury to their own independent rights" and thus were not derivative of the minor child's and were time-barred); *cf. B.F. v. Div. of Youth and Family Svs.*, 296 N.J. Super. 372, 377, 385, 388 (App. Div. 1996) (distinguishing mother's direct claims from her derivative claims in a termination of parental rights case).

[15] *Vedutis v. Tesi*, 135 N.J. Super. 337, 344 (Law Div. 1975) (holding that in cases where a minor child's parent makes a claim that "derives solely from the injuries sustained by the infant," such as "consequential damages," the parent's right to file a claim will be preserved along with the infant's throughout the infant's minority); *Rost v. Bd. of Educ. Of Borough of Fair Lawn*, 137 N.J. Super. App. Div. 1975) (adopting reasoning of *Vedutis*).  Nothing in this Opinion should be deemed to be a determination of whether any particular claim in Count III is independent or derivative.

VI.

For the reasons set forth above, the Court will deny the Cross-Motion with respect to (i) Count II in its entirety; (ii) claims in Count III against public employees based on intentional torts (*Velez*); and (iii) claims in Count III which are derivative of Mr. Davis's claims in Count II.  The Cross-Motion will be granted with respect to the remaining claims in Count III.  The Court will issue an appropriate Order.  To the extent that the Cross-Motion was denied based on the need for a determination of Mr. Davis's competency, such motion may be renewed if warranted by the results of that determination.

Date: <u>May 25, 2005</u>

<u>        s/*Joseph E. Irenas*        </u>
     **JOSEPH E. IRENAS, S.U.S.D.J.**